UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


----oo0oo----


STATE OF CALIFORNIA,
DEPARTMENT OF SOCIAL SERVICES

    and

ENEDINA ROSALES

          NO. CIV. S-99-0355 FCD JFM

       Plaintiffs,

    v.                  <u>MEMORANDUM AND ORDER</u>

MIKE LEAVITT, SECRETARY OF
HEALTH AND HUMAN SERVICES

       Defendant.

----oo0oo----

    This matter is before the court on plaintiff's State of
California, Department of Social Services ("DSS") and defendant's
Michael Leavitt, Secretary of Health and Human Services
("Secretary") motions for relief from judgment pursuant to Rule

1

60(b) of the Federal Rules of Civil Procedure.[1]   Plaintiff-intervenor Enedina Rosales ("Rosales") and various individuals claiming to be protected by this court's prior order ("Movants") have filed cross motions to enforce judgment pursuant to Rule 71. The court heard oral argument on the motion on June 16, 2006 and announced from the bench its decisions to grant the motions for relief for judgment and to grant in part and deny in part the motions to enforce judgment.  By this order, the court memorializes its reasons for the decisions, previously stated on the record at the hearing.

### FACTUAL AND PROCEDURAL BACKGROUND

This case concerns eligibility for benefits under the federal-state Aid to Families with Dependent Children-Foster Care Program ("AFDC-FC").  The AFDC-FC Program, enacted as Title IV-E of the Social Security Act, provides funds to assist with certain costs of foster care for dependent children.  See 42 U.S.C. §§ 672, 674, 675(4)(A).[2]  The program is jointly funded by the federal and state governments, and the funds are disseminated by state agencies.  See id. §§ 670-72, 674.  To receive matching funds, states must have a foster care plan in place that meets federal requirements and disburses funds in accordance with that

---

[1]   All further references to a "Rule" are to the Federal Rules of Civil Procedure.

[2]   In 1996, Congress repealed AFDC as a separate program and enacted, in its place, the Personal Responsibility and Work Opportunity Reconciliation Act, Pub. L. No. 104-193 ("Welfare Reform Act").  Title IV-E still incorporates the AFDC eligibility requirements as they existed prior to the enactment of the Welfare Reform Act, however.  Thus, for the sake of consistency, this Order shall refer to 42 U.S.C. § 672 as it was worded in 1996, prior to the repeal of AFDC.

1  plan.  See id. § 671(a).  If the state plan complies with the

2  mandatory federal requirements, the Secretary must approve the

3  plan.  See id. § 671(b).

4      The California Department of Social Services has a

5  federally-approved foster care plan, and disseminates federal and

6  state funds under that plan.  The State's approved plan provides

7  that, to be eligible for AFDC-FC, a child must have been eligible

8  for AFDC with the parent or relative from whom she was removed.

9  (See Pltf's Complaint for Review of Admin. Action, filed Feb. 24,

10 1999, Ex. 1 (hereinafter "Complaint")).  Thus, if the child was

11 ineligible for AFDC benefits in the home of removal, she will

12 remain ineligible for AFDC-FC benefits in the foster home, even

13 if she would otherwise be eligible for AFDC in the foster home.

**The Land v. Anderson Decision**

15      On May 20, 1997, the California Court of Appeal, Second

16 District, issued a decision in Capitola Land, et al. v. Anderson,

17 55 Cal. App. 4th 69 (1997).  Pending before the Land court were

18 three separate cases granting writs of mandate, holding that the

19 DSS regulations implementing the AFDC-FC Program were contrary to

20 the plain meaning of Section 672(a).[3]  The DSS regulations

21

22      [3]   Section 672(a) provides as follows: "Each State with a
   plan approved under [AFDC] shall make foster care maintenance
23 payments . . . with respect to a child who would meet the
   requirements of [the AFDC program] but for his removal from the
24 home of a relative  . . . if–
       . . .
25
       (4)  such child–
26
       (A) received aid under the State plan . . . in or
27     for the month in which [a voluntary placement]
       agreement was entered into or court proceedings leading
28                                              (continued...)

3

1   mirrored the Secretary's interpretation of Section 672(a).  Under

2   the Secretary's interpretation of Section 672(a), AFDC "linkage"

3   is established if the child was eligible for AFDC in the home of

4   the parent during the month the petition for removal is filed,

5   and either (1) was living in the home of the parent or relative

6   from whom the child was removed; or (2) had been living with that

7   parent or relative within the six months prior to the filing of

8   the removal petition.  However, if a child is living with a

9   relative other than the one from whom the child is being removed,

10  the child is ineligible for AFDC-FC payments if removal

11  proceedings are initiated more than six months after the date the

12  child is no longer living with the parent.

13      The Land court concluded that AFDC linkage could be

14  established if the child was living with a relative, other than

15  the one from whom the child was removed, and was eligible for

16  AFDC in the home of that relative in the month the petition for

17  removal was filed.  See Capitola Land, 55 Cal.App.4th at 84.

18  Accordingly, it held that the DSS requirement violated the AFDC-

19  FC statute.

20  /////

21

22  (...continued)
            to the removal of such child from the home were
23          initiated, or

24          (B) (I) would have received such aid in or for
        such month if application had been made therefor, or
25      (ii) had been living with a relative . . . within six
        months prior to the month in which such agreement was
26      entered into or such proceedings were initiated, and
        would have received such aid in or for such month if in
27      such month he had been living with such a relative and
        application therefor had been made.

28  42 U.S.C. § 672(a) (1996).

4

### The State's Response to Land

On December 23, 1997, DSS submitted a proposed State Plan Amendment to HHS ("1997 Plan Amendment" or "Plan Amendment"). (See Complaint, Ex. 1).  The proposed change consisted of an All-County Letter intended to implement the Land decision, along with representations that DSS would subsequently amend and submit for review its state regulations implementing Land.  On February 10, 1998, DSS received notice from the regional office of HHS that the Plan Amendment was being forwarded to the central office with a recommendation that the Amendment be disapproved.  (See id. Ex. 2).  On April 3, 1998, the HHS regional administrator notified DSS it was disapproving the Amendment.  (See id. Ex. 3).

### Appeal of HHS' Disapproval of the State Plan Amendment

After being notified of HHS' disapproval of the 1997 Plan Amendment, DSS filed a petition for review directly with the Ninth Circuit.  On February 2, 1999, the Ninth Circuit dismissed the appeal for lack of jurisdiction.  See California v. Shalala, 166 F.3d 1019 (9th Cir. 1999).  The court observed, however, that a district court would have jurisdiction to review of the Secretary's actions pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-06 ("APA").  See id. at 1020.

### The Allen Case

On August 13, 1997, Linda Allen filed a petition for writ of mandate in California state court, seeking to compel the State to provide AFDC-FC benefits.  See Linda Allen v. Eloise Anderson, Case No. BS046627 (L.A. Cty. Sup. Ct., filed August 13, 1997). On February 23, 1998, DSS filed a cross-petition and cross-complaint against the Secretary in order to secure matching funds

for any payments it might be obligated to make due to court order. The Secretary then removed the action to the district court for the Central District of California. See Linda Allen v. Eloise Anderson, Case No. 98-2128 CBM (C.D. Cal., filed May 1, 1998).

On October 5, 1998, the district court granted the Secretary's motion to dismiss the cross-claim and cross-petition. DSS filed a notice of appeal with the Ninth Circuit on December 4, 1998. The Ninth Circuit dismissed the appeal as moot on October 13, 1999, in light of the August 21, 1998 enactment of California Welfare and Institutions Code section 11402.1.[4]

## The Litigation

The DSS, on behalf of the State of California, filed this action on February 24, 1999, seeking administrative review of the Secretary's disapproval of the 1997 Plan Amendment. See 5 U.S.C. § 702. Enedina Rosales, a court-appointed foster parent for her grandson, Anthony, intervened in this action by order filed June 24, 1999.

On October 13, 1999, the parties stipulated to stay this action during the pendency of the Allen appeal. On November 1, 1999, the parties notified this court of the outcome of the Allen appeal, but requested that the stay continue, given DSS's plan to move to vacate the district court judgment in Allen. The DSS so

---

[4]     Section 11402.1 states in relevant part: "Notwithstanding any other provision of law, until and unless federal financial participation is obtained, no payment of AFDC-FC may be made from either state or county funds on behalf of a child determined to be eligible for AFDC-FC solely as a result of the decision of the California Court of Appeal in Land v. Anderson (1997) 55 Cal. App. 4th 89."

1  moved, and on March 17, 2000, the motion to vacate was granted by

2  the Allen court.

3      The parties then submitted a Joint Status Report on April 3,

4  2000, requesting that the stay be lifted in this matter.  The

5  court approved the request, and re-calendared the Secretary's

6  previously-filed motion to dismiss.  Subsequently, on April 14,

7  2000, intervener filed a motion for summary judgment, in which

8  DSS joined.  By order dated September 1, 2000, the court granted

9  the Secretary's motion to dismiss, holding that "plaintiff and

10 intervener have not met their onerous burden of demonstrating

11 that the Secretary acted in an arbitrary and capricious manner in

12 denying approval of the State Plan Amendment based upon this

13 reasonable interpretation of section 672(a)."  (September 1, 2000

14 Memorandum and Order Granting Secretary's Motion to Dismiss at

15 12.)  DSS did not appeal the court's decision, but intervener

16 Rosales filed a timely appeal.

17                  **The Ninth Circuit Remand Order**

18     The Ninth Circuit reversed the court's order granting the

19 Secretary's motion to dismiss holding that "the Secretary's

20 proffered interpretation is by every measure unreasonable: it is

21 inconsistent with the statutory language as construed in light of

22 [prior Supreme Court decisions]; it has no support in the

23 legislative history; and it undermines the statutory protections

24 for foster children that Congress intended to provide."

25 CDSS/Rosales v. Thompson, 321 F.3d 835, 856-857 (9th Cir. 2003).

26 The court then remanded the action "for a determination of what

27 relief to grant Ms. Rosales consistent with this opinion."  Id.

28 at 857.

### The Post Remand Proceedings

Shortly after the Ninth Circuit issued its decision in CDSS/Rosales, DSS informed the court that it wished to reenter the litigation.[5]  By order dated February 20, 2004, the court ordered DSS and the Secretary to pay retroactive AFDC-FC benefits to Rosales and similarly situated relative foster care families who were denied benefits as a result of the Secretary's erroneous interpretation of Section 672(a).

Subsequently, based upon the lack of progress made in implementing the court's order, Rosales filed a motion to compel performance of the Secretary.  DSS also filed a motion to amend the February 2004 order to extend the date by which DSS was required to issue an All County Letter ("ACL") informing county welfare departments and other affected agencies of the procedures and time line for implementing the court's order within 90 days of the court's order.  On August 17, 2004, the court issued an Amended Order, directing the Secretary to approve the State Plan Amendment submitted by DSS as of December 23, 1997 and directing DSS to make AFDC-FC payments for the entire period, subsequent to December 23, 1997 in which the child was entitled to AFDC-FC payments under CDSS/Rosales, and was otherwise eligible for such benefits and those payments were not paid.  The court also ordered that DSS issue an ACL to all County Welfare Departments and Chief Probation Officers to review all foster care cases open

---

[5]     The Ninth Circuit stated in its opinion that "[t]his remand will . . . give an opportunity for the State of California to reenter the litigation should it choose to do so and express its view on the appropriate form of relief." CDSS/Rosales, 321 F.3d at 857.

on or after March 3, 2003 to determine eligibility in accordance
with CDSS/Rosales and consistent with the court's order.

### The Deficit Reduction Act

On February 8, 2006 Congress enacted the Deficit Reduction
Act ("DRA"), amending the language of 42 U.S.C. § 672.  The DRA
modifies Title IV-E's reference to AFDC-DC eligibility, providing
that a State must pay benefits on behalf of a child removed from
the home of a relative if, among other things, the child would
have been eligible for AFDC benefits "while in the home."  42
U.S.C. § 672(a) (West 2006).  This modification of § 672(a)
reinstated the Secretary's original interpretation of § 672,
limiting payment of benefits to children who were eligible for
AFDC with the parent or relative from whom they were removed.
The House Report and Conference Report explaining the revisions
to § 672(a) in the DRA declared that the amendments are in direct
response to the Ninth Circuit's decision in CDSS/Rosales and
effectively nullify the decision.  H.R. Conf. Rep. No. 109-362,
at 364 (2005); H.R. Rep. No. 109-276, at 967-68 (2005).

On March 30, 2006, DSS issued an All County Letter to All
County Welfare Directors and Chief Probation Officers, providing
interim instructions for federal statutory changes to
CDSS/Rosales criteria.  (Ex. A to Decl. of Glenn Freitas in Supp.
of DSS' Mot. for Relief ("Freitas Decl."), filed Apr. 13, 2006).
The letter instructed counties to immediately cease basing new
eligibility decisions for foster care upon the CDSS/Rosales
criteria and base eligibility only on the home of the parent from
whom the child was removed.  (Id.)  The letter further instructed
counties to evaluate any case previously determined eligible for

9

1   benefits under the <u>CDSS/Rosales</u> criteria as soon as possible.

2   (<u>Id.</u>)  However, the counties were directed to "'track' all

3   Rosales cases" until clarification was received from the court

4   and the HHS.  (<u>Id.</u>)

5        On June 9, 2006, HHS issued an information memorandum to

6   state agencies administering Title IV-E of the Social Security

7   Act regarding the effect of the DRA.  (Attachment 1 to Def.'s

8   Reply to Intervenor's Opp'n to Mot. for Relief, filed June 9,

9   2006 ("Information Memo")).  In this memorandum, HHS set forth a

10  "phase-in" policy, whereby foster care maintenance payments

11  should be continued through the month of the child's next annual

12  redetermination of eligibility.  (<u>Id.</u>)

13                    **The Current Motions**

14       On April 13, 2006, DSS filed its motion for relief from

15  judgment based upon the enactment of the DRA.  On April 24, 2006,

16  by stipulation, the hearing on DSS' motion was moved to June 2,

17  2006.  On May 16, 2006, the Secretary filed his motion for relief

18  from judgment, noticing a hearing date of June 16, 2006.  On May

19  19, Rosales and Movants filed their cross-motions to enforce the

20  judgment.  In order to hear all matters relating to this issue at

21  once, the court moved the hearing on DSS' motion for relief to

22  June 16, 2006.

23       On June 16, 2006, this court held a hearing on the motions

24  and heard oral argument from the parties.  After review of the

25  record, the materials submitted by the parties, and the arguments

26  made at the hearing, the court GRANTED DSS' and the Secretary's

27  motion for relief from judgment, effective June 9, 2006, and

28  /////

                              10

GRANTED in part and DENIED in part Rosales' and Movant's motions to enforce judgment.

**STANDARD**

**A.   Rule 60**

Rule 60(b) of the Federal Rules of Civil Procedure provides, in relevant part, "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . any [] reason justifying relief from the operation of judgment."  Fed. R. Civ. Proc. 60(b) (West 2006).  A party is bound "to obey an order issued by the court with jurisdiction over the person and subject matter unless and until that order is reversed by appropriate judicial proceedings."  <u>Class v. Norton</u>, 507 F.2d 1058, 1060 (2d Cir. 1974) (citing <u>Walker v. Birmingham</u>, 388 U.S. 307 (1967).  However, "[s]ound judicial discretion may call for the modification of the terms of an injunctive decree is the circumstances, whether of law or fact, . . . have changed."  <u>Sys. Fed'n No. 91, Ry. Employees' Dep't, AFL-CIO v. Wright</u>, 364 U.S. 642, 647 (1961).  The district court has wide discretion in balancing the interests implicated by a motion for relief from judgment under Rule 60.  <u>Id.</u> at 647-48.  However, this discretion is not without limits.  <u>Id.</u> at 648.  Where new circumstances involve a change in the law, not facts, the limits of this discretion are more clear, and the court is required to respect and enforce the change in the law.  <u>See Pennsylvania v. Wheeling & Belmont Bridge Co.</u>, 59 U.S. (18 How.) 421 (1855); <u>see also Wright</u>, 364 U.S. at 648; <u>Norton</u>, 507 F.2d at 1061-62.

/////

**B.   Rule 71**

Rule 71 permits a non-party to enforce an order of the court in the same manner as a party if the order was made for the benefit of such a non-party. Fed. R. Civ. P. 71 (West 2006).  As a preliminary matter, a court must first determine if the non-party is a person or entity "in whose favor" an order has been entered.  Dunn v. N.Y. State Dep't of Labor, 594 F. Supp. 239, 242 (S.D.N.Y. 1984).  If the "in whose favor" threshold is met, a non-party may invoke the jurisdiction of the federal court to "render such orders as may be necessary to effectuate and prevent the frustration of orders it has previously issued." Id. (quoting U.S v. N.Y. Telephone Co., 434 U.S. 159, 172 (1977)).

**ANALYSIS**

**A.   Motion for Relief from Judgment**

DSS and the Secretary seek relief from this court's judgment, arguing that the enactment of the DRA clearly evinced Congress' intent to nullify the Ninth Circuit's holding regarding the interpretation of § 672(a) in CDSS/Rosales.  Rosales argues that the motions should not be granted because the DRA is constitutionally invalid due to Congress' failure to comply with the bicameral requirement.[6]  Further, to the extent that the DRA necessitates relief from judgment, Rosales argues that the relief should be purely prospective in nature, and take effect only from the date of this court's order granting relief under Rule 60(b).

---

[6]      Rosales also argues that the issue is not ripe for review because HHS had not issued formal instructions interpreting the DRA.  However, subsequent to the filing of Rosales' opposition, HHS issued its information memorandum, instructing state agencies how to apply the DRA.  As such, this point is moot.

1        **1.   Validity of the Deficit Reduction Act**

2        Rosales argues that relief from judgment should not be

3   granted because the DRA is constitutionally invalid.

4   Specifically, Rosales argues that the DRA does not comply with

5   the Presentment Clause of the United States Constitution, Art. 1

6   section 7, because the DRA was not passed in identical form by

7   the House of Representatives and the Senate.

8        In the Fall of 2005, the House and the Senate passed

9   different versions of a budget bill.  To reconcile the

10  differences between the two bills, the legislation was sent to a

11  House-Senate Conference Committee, where it was modified.  On

12  December 19, 2005, the Housed passed the bill as agreed upon by

13  conference report.  On December 21, 2005, the Senate passed an

14  amended version of the conference report.  In the course of

15  transmitting the amended version of the bill to the House, a

16  change was made to section 5101 of the bill, altering the

17  duration of the Medicare payments for certain durable medical

18  equipment from 13 months to 36 months.  On February 1, 2006, the

19  House passed the amended bill, with the 36 month duration on

20  Medicare payments.  Subsequently, the legislation passed by the

21  House was altered to reflect the 13 month duration on Medicare

22  payments, as passed in the Senate.  On February 8, 2006,

23  President Bush signed the bill that was passed by the Senate, but

24  not by the House.  Therefore, the Senate passed and the President

25  signed a bill reflecting a 13 month duration on Medicare

26  payments, and the House passed a bill reflecting a 36 month

27  duration on Medicare payments.

28  /////

1    The Secretary argues that, under the "enrolled bill rule"

2  set forth in <u>Marshall Field & Co. v. Clark</u>, 143 U.S. 649 (1892),

3  the DRA is valid.  In <u>Marshall Field</u>, the Supreme Court addressed

4  the validity of the Tariff Act of 1890.  143 U.S. at 667.

5  Plaintiffs argued that the legislation was not valid and could

6  not be applied because the enrolled version of the bill was not

7  the same version which had been before the House and the Senate.

8  <u>Id.</u> at 668-69.  However, the Speaker of the House of

9  Representatives and the President of the Senate had signed the

10 enrolled bill.  <u>Id.</u> at 668.  The Supreme Court held that these

11 signatures constituted "an official attestation by the two houses

12 of such bill as one that has passed Congress."  <u>Id.</u> at 672.

13 Accordingly, the Court further held that "[t]he respect due to

14 coequal an independent departments requires the judicial

15 department to act upon that assurance, and to accept, as having

16 passed congress, all bills authenticated in [this] manner . . .

17 ."  <u>Id.</u>

18    In this case, in approving the Deficit Reduction Act, the

19 President signed the bill that had been duly enrolled and

20 authenticated by both the Speaker of the House, Dennis Hastert,

21 and the President <u>Pro Tempore</u> of the Senate, Theodore F. Stevens.

22 (Attachment 2 to Def.'s Reply to Intervenor's Opp'n to Mot. for

23 Relief, filed June 9, 2006).  Pursuant to the Supreme Court's

24 ruling in <u>Marshall Field</u>, the "authentication [of an Act] as a

25 bill that has passed congress should be deemed complete and

26 unimpeachable."  <u>Marshall Field</u>, 143 U.S. at 672.  As such, the

27 court is required to rely on the attestations of the Speaker of

28 the House and the President <u>Pro Tempore</u> of the Senate that a bill

has been enacted by both houses of Congress.  Therefore, for the purposes of these motions, the Court must recognize the DRA as a valid and operable legislation.[7]  <u>See also</u>, <u>United States v. Pabon-Cruz</u>, 391 F.3d 86, 99 (2d Cir. 2004); <u>United States v. Thomas</u>, 788 F.2d 1250, 1253 (7th Cir. 1986); <u>Cherry v. Steiner</u>, 716 F.2d 687 (9th Cir. 1983) ("The enrolled bill doctrine is intended to forestall judicial inquiry into procedural irregularities occurring prior to the enactment of bills . . . .").

### 2.   Terms of Relief

The Secretary and DSS assert that the provisions modifying the the terms of AFDC-FC eligibility in the DRA should be applied prospectively from the date of the enactment of the legislation, February 8, 2006.  Rosales argues that the modified eligibility criteria should not be applied until this court issues its order, granting the Secretary and DSS' relief from judgment.

Rule 60(b) provides that the court may relieve a party from judgment "upon such terms as are just."  The unique circumstances and procedural posture of this case require that the court consider the important, and, in some cases, competing interests that are affected by the parties' motions.  The law is clear that

---

[7]     Rosales relies on <u>United States v. Munoz-Flores</u>, 495 U.S. 385 (1990) to support her argument that the DRA is constitutionally invalid.  However, the facts of <u>Munoz-Flores</u> are distinguishable from the facts of this case.  In <u>Munoz-Flores</u>, the Court assessed the validity of the Victims of Crime Act where defendant argued that it violated the Origination Clause.  <u>Id.</u> at 387.  However, the alleged constitutional issues were clear from the face of the enacted legislation because the bill had originated from the Senate, not the House.  Therefore, the Court reviewed the constitutionality of the congressional enactment, not procedural irregularities prior to enactment.  <u>Id.</u> at 391.

1    a party is not relieved from judgment until this court or an
2    Article III appellate court grants such relief.  Walker, 388 U.S.
3    307.  Respect for the judiciary and judicial orders requires that
4    parties comply with a court's decision and orders until the court
5    issues orders to the contrary.  However, Congress clearly set
6    forth its intent, through the enactment of the DRA, that the
7    Ninth Circuit's interpretation of § 672(a) in CDSS/Rosales is no
8    longer applicable.  The Secretary has a compelling interest in
9    ensuring that this Congressional intent is implemented in timely
10   manner by the states.  DSS has an important interest in ensuring
11   that it is complying with federal law in order to receive
12   reimbursement at the federal participation rate.  Rosales has an
13   important interest in enforcing the court's judgment for so long
14   as it remains the applicable law.

15        The DRA was enacted on February 8, 2006.  The language
16   relating to eligibility for AFDC-FC benefits made clear that the
17   requirements had changed from the Ninth Circuit's findings in
18   CDSS/Rosales.  However, the DRA was silent on how HHS or state
19   agencies should interpret this change in the language and on hoe
20   state agencies should implement this change into their plans
21   which need approval by the Secretary.  There is no evidence
22   submitted to the court that HHS issued any guidance to DSS
23   regarding implementation procedures.  Nevertheless, on March 30,
24   2006, DSS instructed counties to immediately cease basing new
25   eligibility decisions for foster care upon the CDSS/Rosales
26   criteria and to evaluate any case previously determined eligible
27   for benefits under the CDSS/Rosales criteria as soon as possible.
28   With the issuance of this letter, DSS effectively instructed

16

counties to disregard this court's prior orders.  On April 13, 2006, more than two months after enactment of the DRA and after instructing non-compliance with the court's orders, DSS filed its motion for relief from judgment pursuant to Rule 60, and then stipulated to a hearing date on June 2, 2006.  On May 16, 2006, more than three months after enactment of the DRA, the Secretary filed his motion for relief from judgment, noticing the motion for hearing on June 16, 2006.  On June 9, 2006, HHS issued an information memorandum, setting forth a "phase-in" policy for implementing the DRA's modification in AFDC-FC eligibility, whereby foster care maintenance payments should continue through the month of the child's next annual redetermination of eligibility.

       After review of the record and the materials submitted by the parties, and after consideration of the interests involved in and affected by this litigation, the court finds that relief from judgment on "just terms" requires that relief be granted from June 9, 2006, when the formal information memorandum was issued by HHS, instructing state agencies how the language of the DRA was to be implemented.  Principles of judicial comity require that the court's order be respected and complied with until lifted.  Parties cannot choose when and how they will comply with a court order.  To the extent that DSS and the Secretary desired to be relieved from judgment on the date of enactment of the DRA, they could have filed a motion earlier and moved for an expedited briefing schedule.  However, such was not the case in this litigation.

/////

Further, pursuant to the relevant statutory regime, the State and DSS need guidance and approval of the Secretary regarding the State Plan.  The court will not issue an order that requires the State and DSS to self-interpret legislation, in this case the DRA, without guidance from the Secretary.  Based upon the evidence submitted to the court, DSS had no knowledge of HSS' "phase-in" policy and cannot be expected to anticipate the Secretary's implementation policy before HHS issues any formal guidance.

As of June 9, 2006, with the issuance of the information memorandum, it was clear to DSS that the Secretary's policy pursuant to the enactment was to no longer reimburse payments made to ineligible CDSS/Rosales applicants and that such payments should stop after the month of the child's next annual redetermination of eligibility.  Therefore, DSS' and the Secretary's motion for relief from judgment is GRANTED, effective June 9, 2006.

**B.    Motion to Enforce Judgment**

Rosales and various individual Movants bring cross-motions to enforce the court's August 17, 2004 judgment.  Specifically, Rosales and Movants move to enforce the court-ordered review of open foster care cases to determine eligibility for benefits pursuant to CDSS/Rosales.

As a preliminary matter, DSS and the Secretary argue that Movants do not have standing to bring a motion to enforce judgment pursuant to Rule 71.  Rule 71 provides that "[w]hen an order is made in favor of a person who is not a party to the action, that person my enforce obedience to the order by the same

18

process as if a party." The court's August 17, 2004 order provided that DSS was to issue an All County Letter, directing the appropriate parties to review all foster care cases open on or after March 3, 2003 to determine eligibility in accordance with CDSS/Rosales. In this case, the declarations and materials submitted by Movants demonstrate that all Movants had foster care cases open on or after March 3, 2003. (See Decl. of Marjorie Shelvy in Supp. of Mot. to Enforce J. ("Shelvy Decl."), filed May 19, 2006; Req. for Judicial Notice, filed May 19, 2006). Therefore, the court's August 17, 2004 order was made in favor of Movants, and they have standing to move to enforce the court-ordered review pursuant to Rule 71.

Rosales and Movants argue that DSS has failed to comply with the court's order because it has failed to conduct the court-ordered review and, consequentially, failed to pay out benefits to CDSS/Rosales-eligible applicants.

As evidence of the failure to comply, Rosales and Movants assert that DSS did not issue any Notice of Action letters ("NOAs") to applicants that were denied benefits after a review for eligibility under the interpretation of § 672(a) set forth in CDSS/Rosales. The court's August 17, 2004 order did not explicitly require DSS to issue NOAs. Rosales and Movants argue that State regulations, namely § 22-071 of the Manual of Policies and Procedures ("MPP"), require the issuance of NOAs after the denial of benefits. However, it is DSS' position that MPP § 22-071 does not require notice when there is no change in a child's foster care benefits. (Ex. F to Shelvy Decl.). The court's August 17, 2004 order also did not direct DSS to re-evaluate its

19

1  policies and the interpretation of MPP § 22-071.  Nor is this

2  issue properly before the court.  Therefore, DSS' failure to

3  issue NOAs after the court-ordered review was not required by the

4  court's prior order, nor is it evidence that DSS or the counties

5  failed to follow the court order.

6      As other evidence of the failure to comply, Rosales and

7  Movants point to the denial of benefits in each of their

8  individual cases.  The court has reviewed the submissions of

9  Rosales and Movants.  In the cases of Movants Deegan, Jefferson,

10 and Spencer, the materials submitted indicate that the child was

11 not entitled to AFDC-FC benefits because there is no indication,

12 and in some cases contrary assertions, that the child was living

13 with the Movant relative prior to removal.  In the cases of

14 Rosales and Movants Larry and Brenda Buggs, the evidence

15 submitted is insufficient to determine whether the parties are

16 eligible for AFDC-FC benefits.  Further, even if DSS wrongly

17 denied AFDC-FC benefits in two or potentially five individual

18 cases, this showing is insufficient to demonstrate that DSS has

19 failed to comply with the court's August 17, 2004 order.

20 Further, to the extent that Rosales and Movants disagree with the

21 county's denial of benefits, there are administrative remedies

22 available to adequately address these claims.  See MPP § 22-078.

23     Therefore, because neither Rosales nor Movants have provided

24 any evidence that DSS has not complied with the court's order

25 prior to March 30, 2006, the cross-motions to enforce judgment

26 are DENIED in part.  However, evidence has been presented that

27 DSS effectively disregarded the court's order through it March

28 30, 2006 letter, instructing counties to immediately cease basing

new eligibility decisions for foster care upon the <u>CDSS/Rosales</u>
criteria and to evaluate any case previously determined eligible
for benefits under the <u>CDSS/Rosales</u> criteria as soon as possible.
DSS had not been relieved of the court's August 17, 2004 order at
the time this letter was issued, and, as set forth above, DSS has
only been relieved from judgment effective June 9, 2006.
Accordingly, Rosales and Movants motions are also GRANTED in
part.

### CONCLUSION

For the reasons stated above, the court makes the following
orders:

(1)   The Court GRANTS DSS' and the Secretary's motions for
      relief from judgment pursuant to Rule 60(b)(6) of the
      Federal Rules of Civil Procedure.  The court finds that
      relief from judgment on "just" terms requires that
      relief be granted from June 9, 2006, when a formal
      information memo was issued by Health and Human
      Services ("HHS"), instructing state agencies, including
      DSS, how the language of the DRA was to be implemented.
      As such, relief from judgment is effective June 9,
      2006.

(2)   The Court GRANTS in part and DENIES in part Rosales'
      and Movants' motions to enforce judgment.  Because
      neither Rosales nor Movants have provided any evidence
      that DSS has not complied with the court's order prior
      to March 30, 2006, the motions to enforce judgment are
      DENIED in part.  However, because evidence has been
      presented that DSS instructed counties to effectively

21

1    disregard the court's order through the March 30, 2006

2    letter, the motions are GRANTED in part.   Therefore,

3    the court orders:

4    (a)   DSS shall make AFDC-FC payments from March 30,

5          2006 through June 9, 2006, for those cases in

6          which the child was entitled to AFDC-FC payments

7          under <u>CDSS/Rosales v. Thompson</u>, 321 F.3d 835 (9th

8          Cir. 2003), and was otherwise eligible for such

9          benefits and those payments were not paid.

10   (b)   The Secretary shall reimburse DSS, and the State

11         of California, at the federal participation rate,

12         for all AFDC-FC benefits paid by DSS pursuant to

13         the approved Title IV-E AFDC-FC State Plan

14         Amendment and this court's prior order which

15         remained effective until June 9, 2006.

16   IT IS SO ORDERED.

17   DATED: July 17, 2006

18                          /s/ Frank C. Damrell Jr.
                            FRANK C. DAMRELL, Jr.
19                          UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28